No. 3267

Second Circuit

---

GEORGE E. BREECE LUMBER CO v. EDWARDS

---

(May 22, 1928.   Opinion and Decree.)

---

(*Syllabus by the Court*)

1.   **Louisiana Digest—Timber—Par. 1, 3.**
One who exchanges standing pine timber for pine logs delivered at its mill is entitled to sound logs and is not liable in damages for refusing to accept worm eaten logs.
    C. C., 2156.

Appeal from the Third Judicial District Court, Parish of Union. Hon. S. D. Pearce, Judge.

Action by George E. Breece Lumber Company against R. L. Edwards.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Hudson, Potts, Bernstein and Sholars, of Monroe, attorneys for plaintiff, appellee.

S. L. Digby, of Farmerville, attorney for defendant, appellant.

### STATEMENT OF THE CASE.

REYNOLDS, J.   The O. S. Hawes Lumber Company and defendant R. L. Edwards, both owners and operators of sawmills and of tracts of merchantable pine timber of approximately 3,000,000 feet each, on September 24, 1923, entered into a written contract for an exchange of pine timber by the terms of which each was to take from the land of the other an equal quantity of timber to be determined on stumpage basis, thousand feet for thousand feet, and defendant R. L. Edwards agreed to cut, log and deliver his timber to the mill of the O. S. Hawes Lumber Company and was to be paid by it therefor $7.50 per thousand feet.   The deliveries were to be made during the years 1923 and 1924 but by verbal agreement of the parties was extended to include the years 1925 and 1926.

At the conclusion of the deliveries under the contract it appeared that defendant R. L. Edwards had cut and appropriated from the timber of the other party 143,846 in excess of what had been received by the other party from defendant R. L. Edward's timber.

Alleging that by transfer on December 12, 1924, it succeeded to the rights of the O. S. Hawes Lumber Company under the contract with the consent, both express and implied of defendant R. L. Edwards,

plaintiff George E. Breece Lumber Company brought this action to recover from defendant the sum of $511.44, as and for 143,846 feet of timber at $4.50 per thousand feet, amounting to $647.31, less $135.77 severance tax paid by defendant.

Defendant excepted to the petition on the ground that it disclosed no cause of action and by agreement of parties the exception was referred to the merits.

Defendant then answered denying that plaintiff was legally subrogated to the rights of the O. S. Hawes Lumber Company and alleging that the transfer from the O. S. Hawes Lumber Company to plaintiff was void because it affected realty and was not in writing.

Defendant further alleged that acting under the contract it cut, in addition to the number of feet alleged by plaintiff to have been received by it, 841,740 feet of timber and was moving it out of the swamp, preparatory to sending it to plaintiff's mill when plaintiff stopped him from making further deliveries and that in consequence said timber, which plaintiff was obligated to take, remained on the ground for two years and plaintiff refused to accept it and defendant, in order to minimize his loss, hauled it to his own sawmill and manufactured it into lumber and suffered a loss thereon of $4.00 per thousand feet or $3,366.96, and he reconvened against plaintiff for that amount.

On these issues the case was tried and there was judgment in favor of plaintiff for $511.54 with legal interest from judicial demand, and defendant appealed.

### OPINION.

### EXCEPTION OF NO CAUSE OF ACTION.

Defendant did not set out in his exception wherein the petition was lacking in stating a cause of action, but in his an-

swer he alleges that the petition shows no cause of action because the subject matter of the contract is realty and plaintiff could acquire an interest therein only by a writing and a written assignment is not alleged.

If the validity of the assignment of the contract could be raised by defendant we think he is estopped to question it by reason of his reconventional demand.

Besides, the contract only related to standing timber, and as to standing timber see—

Cleaton vs. Dowling, 164 La. —, 113 South. 759. No. 9 Southern Reporter, Advance Sheets, September 17, 1927.

There is no merit in the exception.

## ON THE MERITS.

Defendant admits that he removed from plaintiff's land 143,846 feet, board measure, of pine timber, more than plaintiff received from defendant's land, and the evidence shows and defendant does not dispute that such timber was worth $4.50 per thousand feet, board measure, amounting, after deduction of severance tax, to $511.54, but sets up by way of set-off and reconvention a claim for $3366.96, damages he alleges he sustained by reason of the refusal of plaintiff to receive and pay for 841,740 feet of pine timber, board measure, his loss on which he alleges, was $4.00 per thousand feet.

So the only question for our determination is the set-off and reconventional demand of defendant.

The evidence makes it clear, we think, that plaintiff did not refuse to accept any timber that by the contract it was under obligation to accept, and that the timber it refused was worthless.

Defendant, R. L. Edwards, testified that the 841,740 feet of timber lay in the swamp for two years before he removed it to his own mill and manufactured it into lumber, and:

"Q. At the time you carried them (logs) out to your mill, what condition was this timber in?

"A. Some in pretty bad condition; and some was not so bad.

* * *

"Q. Mr. Edwards, on what date did you receive a letter from the Breece Lumber Company refusing to take these logs?

"A. Some time in the summer of 1925. You can get it, I guess, from the time I made the last delivery of logs; I suppose along in 1925.

"Q. The last delivery of logs was made in * * * July, 1925.

"A. That is about the time.

"Q. It is your testimony, then, that that is your first knowledge that you had that the Breece Lumber Company would not accept these logs?

"A. Yes, sir.

"Q. You were under the impression that they would accept them if you would make certain deductions?

"A. Yes, sir.

"Q. Did you ever tender them on that basis?

"A. No, sir.

"Q. From July, 1924, to July, 1925, did you ever tender them to them at a lesser price?

"A. No, sir.

"Q. You permitted them to stay there in the woods waiting for the water? * * *

"A. Yes, sir.

"Q. You let them stay there a little over a year and made no tender of them to them?

"A. I could not; we didn't have any water."

By the court:

"Q. Mr. Edwards, had there been any damage done to the logs at the time you say they were refused by the plaintiffs, the Breece Lumber Company?

"A. Yes, sir; that was something over two years from the time they were cut.

"Q. At the time they stopped you?

"A. Yes, sir.

"Q. Were the logs damaged any at the time they stopped you from hauling them?

"A. Yes, sir; but the question of damage was not considered; that is, he wanted us to leave the logs there and bring them in when the high water came, and take off the price for rehauling them when the water came the next winter, and the water didn't get out of the banks of the river."

Emmett Crow, a witness for defendant, testified:

"Q. How much was this 841,740 feet of timber that was left in the swamp and finally salvaged by Mr. Edwards, damaged per thousand, when it was finally manufactured by him in 1925?

"A. I consider it was damaged to the amount it was worth at first. I would not have given anything at all for the timber the way it was, the condition it was in, in the summer of 1925.

"Q. How much would you say the damage per thousand to this timber was?

"A. Well, the minimum it was damaged $4.00 all right; it was damaged as much as $4.00 or more.

* * *

"Q. Please state, whether or not, from your timber experience, these logs were being damaged every day they stayed there?

"A. Yes, sir; from 1924 until they were sawed up.

"Q. Do you know why Mr. Edwards permitted the logs to remain there from July, 1924, to July, 1925, when he saw there was no high water?

"A. I don't know why he left them there other than awaiting for high water."

Defendant's 841,740 feet of logs were worm eaten and plaintiff was under no obligation to accept them and incurred no liability to defendant in refusing to accept them.

The evidence makes it clear that defendant cut and removed from plaintiff's land to his mill 2,887,552 feet of timber and cut from his own land and delivered at plaintiff's mill an equal quantity of timber, and that in addition thereto defendant cut and removed to his mill from plaintiff's land 143,846 feet of pine timber for which plaintiff has not received any consideration whatever. Defendant therefore owes plaintiff the value of this timber which, the evidence shows, was worth $4.50 per thousand feet.

Plaintiff was in no way responsible for defendant cutting 841,740 feet of timber from his own land and letting it lie in the swamp until it became worm eaten and worthless, and defendant's only complaint against plaintiff is that it refused to accept worm eaten and worthless timber under their contract which entitled it to sound timber.

The judgment appealed from is correct and accordingly it is affirmed.